**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ALVIN BROWN,
　　4454 Maywood Drive
　　Jacksonville, FL 32277,

　　　　*Petitioner*,

v.

JOHN DELEEUW,
　　490 L'Enfant Plaza, SW
　　Washington, D.C. 20594,

　　　　*Respondent*.

Case No. _____

**PETITION FOR LEAVE TO ISSUE
WRIT OF QUO WARRANTO**

**JURY TRIAL REQUESTED**

## PETITION FOR LEAVE TO ISSUE WRIT OF QUO WARRANTO

Pursuant to D.C. Code § 16-3503, petitioner Alvin Brown respectfully asks that the Court grant him leave to issue a writ of quo warranto in the name of the United States to respondent John DeLeeuw through undersigned counsel. As explained further below, Mr. DeLeeuw has usurped the office of Member of the National Transportation Safety Board ("NTSB" or "Board"). As the rightful holder of that office, Mr. Brown is an "interested person" within the meaning of Section 16-3503. As required by Section 16-3503, Mr. Brown has asked both the Attorney General of the United States and the U.S. Attorney for the District of Columbia to issue

a writ of quo warranto to Mr. DeLeeuw, and those requests have been constructively denied. *See* Ex. A. Mr. Brown is prepared to post a bond as security for costs as directed by the Court. *See* D.C. Code §§ 16-3502, 16-3503.[1] Accordingly, as explained further below, the requirements for issuance of a writ of quo warranto have been satisfied.

## INTRODUCTION

1.    Petitioner Alvin Brown was unanimously confirmed by the U.S. Senate on March 8, 2024, to a seat on the NTSB, for a term that does not expire until December 31, 2026. Although Mr. Brown was never lawfully removed from office, and continues to rightfully occupy his NTSB seat, on March 16, 2026, respondent John DeLeeuw began holding himself out as the occupant of Mr. Brown's office and has been performing the functions of an NTSB Member since then. Mr. DeLeeuw is therefore "usurp[ing], intrud[ing] into, or unlawfully hold[ing] . . . a public office of the United States" within the meaning of D.C. Code § 16-3501.

2.    This controversy has its origin in President Donald J. Trump's illegal attempt to remove Mr. Brown from the NTSB. On May 5, 2025, President Trump directed the NTSB to remove Mr. Brown from office. But this directive was unlawful and ineffectual for two independent reasons. First, the President is authorized to remove a Board member only for inefficiency, neglect of duty, or malfeasance in office, *see* 49 U.S.C. § 1111(c), but President Trump purported to remove Mr. Brown without any cause. Second, President Trump's removal of Mr. Brown, a Black man, was racially motivated, and therefore violated Mr. Brown's constitutional rights under the Fifth Amendment.

---

[1] While Mr. Brown is prepared to post bond as contemplated by statute, it is not clear that there are any "costs" that would be "incurred in the prosecution of the writ" that would not already be borne by Mr. Brown or his counsel. D.C. Code § 16-3502. Accordingly, no more than a *de minimis* bond should be required.

3.      Mr. Brown promptly brought suit against President Trump, the NTSB, and NTSB Chair Jennifer Homendy to challenge his unlawful removal. That action, which is captioned *Brown v. Trump*, No. 1:25-cv-01764 (D.D.C.) (Friedrich, J.) (*Brown I*), remains pending.

4.      Though Mr. Brown's office was never lawfully vacated, on January 13, 2026, President Trump nominated John DeLeeuw to fill Mr. Brown's NTSB seat and to serve for the unexpired portion of Mr. Brown's term. On March 16, 2026, following Senate confirmation, Mr. DeLeeuw took the oath of office and purported to assume the NTSB seat that Mr. Brown still rightfully occupies. *See John DeLeeuw*, NTSB, https://perma.cc/KEA2-E9AQ (last visited Apr. 12, 2026).

5.      Under D.C. Circuit precedent, Mr. Brown maintains that he can obtain complete relief, including reinstatement, through his pending action in *Brown I*, notwithstanding Mr. DeLeeuw's recent confirmation. *See Swan v. Clinton*, 100 F.3d 973, 975-81 (D.C. Cir. 1996) (holding that Court had power to provide relief to plaintiff challenging legality of his removal, notwithstanding the fact that the President had recess appointed another person to plaintiff's seat); *cf. Kalbfus v. Siddons*, 42 App. D.C. 310, 319-21 (D.C. Cir. 1914) (finding mandamus, not quo warranto, is the most efficacious and appropriate means for restoring an official who was never lawfully removed from office). Nonetheless, the Solicitor General of the United States has recently taken the position that if "there [are] two competing claimants" to an office following a removal of disputed validity, a "quo warranto" action is the proper procedural vehicle for establishing the wrongfully removed officer's right to reinstatement. Tr. of Oral Arg. at 34, *Trump v. Cook*, No. 25A312 (U.S. Jan. 21, 2026), https://perma.cc/36P9-ZPD6. Although recent decisions of the D.C. Circuit contradict that view, there is at least some authority suggesting that where a disputed office has been filled by a new incumbent who is actively exercising the functions of that office, a writ

of quo warranto is the proper mechanism for adjudicating an improperly removed official's claim of continuing right to office. *See, e.g.*, Montgomery H. Throop, *A Treatise on the Law Relating to Public Officers* § 825 (1892). Mr. Brown accordingly brings this petition out of an abundance of caution in the event the *Brown I* defendants argue that Mr. DeLeeuw's confirmation precludes Mr. Brown from obtaining relief except through a writ of quo warranto.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.       Venue is proper in this district pursuant to D.C. Code § 16-3501 because Mr. DeLeeuw has, within the District of Columbia, usurped a public office of the United States. *See also* 28 U.S.C. § 1491(b)(2).

## PARTIES

8.      Petitioner Alvin Brown is a Board member of the NTSB, confirmed by a voice vote of the United States Senate to a five-year term expiring December 31, 2026.

9.      Respondent John DeLeeuw is sued in his capacity as a purported Member of the NTSB.

## STATUTORY BACKGROUND OF THE NTSB

10.      The NTSB is an independent government agency tasked with securing the safety of American transportation by investigating accidents, performing studies, issuing safety recommendations, and assisting the victims and survivors of transportation disasters.

11.      The NTSB can be traced to the Air Commerce Act of 1926, when Congress vested the Department of Commerce with the responsibility to investigate aircraft accidents. That authority was later transferred to the Civil Aeronautics Board upon its creation in 1940. By 1967, Congress decided that transportation safety could be more effectively promoted by a single agency

4

with a clearly defined mission rather than the piecemeal approach of having different entities for different modes of transportation. Congress consolidated them all under the newly minted National Transportation Safety Board, within the newly created Department of Transportation (DOT).

12.     Seven years later, in 1974, Congress bolstered the NTSB's independence by establishing the NTSB as a separate entity outside of DOT or any other agency as set forth in the Independent Safety Board Act of 1974. Congress explained that the NTSB needed to be independent of the Department of Transportation and all other agencies in order to conduct independent accident investigations and formulate safety improvement recommendations that at times may be critical of agencies and their officials:

> (1) The National Transportation Safety Board was established by statute in 1966 (Public Law 89-670; 80 Stat. 935) as an independent Government agency, located within the Department of Transportation, to promote transportation safety by conducting independent accident investigations and by formulating safety improvement recommendations.
>
> (2) Proper conduct of the responsibilities assigned to this Board requires vigorous investigation of accidents involving transportation modes regulated by other agencies of Government; demands continual review, appraisal, and assessment of the operating practices and regulations of all such agencies; and calls for the making of conclusions and recommendations that may be critical of or adverse to any such agency or its officials. No Federal agency can properly perform such functions unless it is totally separate and independent from any other department, bureau, commission, or agency of the United States.

Independent Safety Board Act of 1974, Pub. L. No. 93-633, § 302, 88 Stat. 2156, 2166-67 (1975).

13.     Consistent with its findings, Congress explicitly established the NTSB as an independent agency: "The National Transportation Safety Board is an independent establishment of the United States Government." 49 U.S.C. § 1111(a).

14.     Congress structured the Board as what the Supreme Court has characterized as a traditional independent agency, run by a multimember board with a diverse set of viewpoints and experiences. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 205-06 (2020). The Board consists of

five members "appointed by the President, by and with the advice and consent of the Senate," and "[n]ot more than 3 members may be appointed from the same political party." 49 U.S.C. § 1111(b). At least three of the members must be "appointed on the basis of technical qualification, professional standing, and demonstrated knowledge in accident reconstruction, safety engineering, human factors, transportation safety, or transportation regulation." *Id.*

15.    The members serve five-year terms. 49 U.S.C. § 1111(c). The terms are staggered so that each year the term of one member ends. Department of Transportation Act, Pub. L. No. 89-670, § 5(i), 80 Stat. 931, 936 (1966). When the term ends, the member may continue to serve until a successor is appointed and qualified. 49 U.S.C. § 1111(c).

16.    The President may only "remove a member for inefficiency, neglect of duty, or malfeasance in office." *Id.*

17.    The President designates a Chairman of the Board with the advice and consent of the Senate. 49 U.S.C. § 1111(d). The Chairman serves as the chief executive and administrative officer of the Board. *Id.* § 1111(e). The President also designates a Vice Chairman. *Id.* § 1111(d). Both the Chairman and Vice Chairman serve three-year terms in those positions. *Id.*

18.    Congress enacted the Independent Safety Board Act of 1974 for the purpose of creating an independent NTSB that would serve as a bipartisan, multi-member, independent board of experts, not as a vehicle for any president's political agenda. Congress ensured the Board's independence by limiting the President's authority to remove Board members. 49 U.S.C. § 1111(c). By mandating that no more than three of the five members be of the same political party and by staggering the members' five-year terms, Congress intended for the Board's work to be informed by a diversity of viewpoints. At the same time, the law ensures that the President can

shape the composition of the Board by granting the President authority to appoint a new member each year, with the advice and consent of the Senate. *Id.* § 1111(b).

19.      Consistent with its status as a traditional independent agency, the NTSB primarily exercises quasi-legislative and quasi-judicial functions. It exercises executive functions only in the discharge of its quasi-legislative and quasi-judicial functions. Most of the NTSB's functions are quasi-legislative.

20.      The NTSB describes itself as "an independent agency" whose "mission" since its 1967 creation "has been to determine the probable cause of transportation accidents and to formulate safety recommendations to improve transportation safety." NTSB, *What is the National Transportation Safety Board?*, at 1, https://perma.cc/UZ9P-ENE9 (last visited Apr. 12, 2026). The NTSB's primary function is to "investigate or have investigated" and "establish the facts, circumstances, and cause(s)" of major accidents involving transportation, 49 U.S.C. § 1131(a)(1), including:

> all U.S. civil aviation accidents and certain public-use aircraft accidents; selected highway accidents; railroad accidents involving passenger trains or selected freight train accidents that result in fatalities or significant property damage; major marine accidents and any marine accident involving both a public and a nonpublic vessel; pipeline accidents involving fatalities, substantial property damage, or significant environmental damage; selected accidents resulting in the release of hazardous materials in any mode of transportation; and selected transportation accidents that involve problems of a recurring nature or are catastrophic.

*What is the National Transportation Safety Board?* at 1. The Board "shall report on the facts and circumstances of each accident investigated by it." 49 U.S.C. § 1131(e).

21.      In addition, the Board issues an annual report to Congress about its work and periodic reports to Congress and other federal and state transportation safety agencies and conducts special studies and investigations about transportation safety. 49 U.S.C. §§ 1116-17.

22.     Notably, as part of these investigatory, reporting, and recommending functions, the NTSB "has no regulatory or enforcement authority and does not investigate criminal activity." NTSB, *NTSB Accident Investigations: Information for survivors, families & friends*, https://perma.cc/WM6X-BKHG (last visited Apr. 12, 2026). The NTSB has no authority to enforce any safety recommendations it makes.

23.     The Board reviews on appeal certain certification decisions made by other agencies, such as the denial, amendment, modification, suspension, or revocation of certificates issued by the Federal Aviation Administration or Coast Guard. *See* 49 U.S.C. § 1133.

### MR. BROWN'S UNLAWFUL AND DISCRIMINATORY TERMINATION

24.     Petitioner Brown was nominated as a Democratic member of the NTSB in August 2022 and renominated on January 23, 2023, by President Joe Biden. He was unanimously confirmed by the Senate by voice vote on March 8, 2024, to a term expiring on December 31, 2026. President Biden named Mr. Brown Vice Chair of the Board on December 20, 2024.

25.     Prior to his appointment as an NTSB Member, Mr. Brown had a long and distinguished career in urban planning, public administration, and transportation as a public servant. He served as senior advisor to former Commerce Secretary Ron Brown, Vice President Al Gore's Senior Advisor for Urban Policy, and executive director of the White House Community Empowerment Board. He was the first-ever Black person elected as mayor of Jacksonville, Florida and served from 2011 to 2015. During his mayoral tenure, he served as Chair of the Port and Exports Council and Vice-Chair of the Transportation Committee for the United States Conference of Mayors. He also served as senior advisor for community infrastructure opportunities at the United States Department of Transportation.

26.     On May 5, 2025, at 6:57 p.m., Mr. Brown received an email from Trent Morse, the Deputy Director of Presidential Personnel of the White House. The entire body of the email reads as follows:

> Alvin,
>
> On behalf of President Donald J. Trump, I am writing to inform you that your position on the National Transportation Safety Board is terminated effective immediately.
>
> Thank you for your service.
>
> Trent Morse
> Deputy Director
> Presidential Personnel

As the email reflects, Mr. Brown was not removed for inefficiency, neglect of duty, or malfeasance in office. Mr. Brown was given no reason for his removal.

27.     The NTSB then cut off Mr. Brown's access to NTSB systems, email, and offices on May 6, 2025, and Mr. Brown has not been able to perform his duties as a Board Member since that date. Around the same time, the NTSB human resources office took other steps to effectuate Mr. Brown's removal, including informing Mr. Brown's staff that his employment was being terminated because of his removal; requiring Mr. Brown to return his equipment; and processing the federal personnel paperwork to officially document his departure.

28.     On September 10, 2025, President Trump first nominated respondent John DeLeeuw, a white man, to Mr. Brown's position. When Mr. DeLeeuw's nomination was returned following the December 2025 Senate recess, President Trump re-nominated Mr. DeLeeuw on January 13, 2026, to serve Mr. Brown's unexpired term.

29.     Mr. Brown is a Black man. At the time of his removal from the NTSB there were four other members on the Board: Chair Jennifer Homendy and Members Michael E. Graham, Thomas B. Chapman, and J. Todd Inman. Homendy, Graham, Chapman, and Inman are all white. Homendy and Chapman were Democratic members. Graham and Inman were Republican ones.

9

Mr. Brown is the only Democratic member terminated by President Trump. Inman, a Republican, was terminated on March 9, 2026—more than ten months after Mr. Brown's removal. Unlike in Mr. Brown's case, the White House issued a public statement identifying specific alleged reasons for Mr. Inman's termination. *See*, *e.g.*, Chris Marquette, *White House says NTSB member was fired for inappropriate alcohol use, harassment*, POLITICO (Mar. 9, 2026), https://www.politico.com/news/2026/03/09/ntsb-member-fired-alcohol-harassment-00818712.

30. Mr. Brown's removal from the NTSB cannot be explained by the fact that Mr. Brown is a Democrat and President Trump might have wanted to exert Republican control over the Board. At the time of Mr. Brown's removal from the NTSB, there were two other Democrats serving on the Board: Chair Homendy and Member Thomas B. Chapman. Member Chapman was nominated for a position on the NTSB by President Trump and took his oath of office on January 6, 2020. Unlike Mr. Brown, whose term on the Board does not expire until 2026, Member Chapman's term on the NTSB already expired on December 31, 2023. Member Chapman has, since 2023, continued serving in his seat on the NTSB, despite his expired term. Instead of removing Mr. Brown, President Trump could have nominated Mr. DeLeeuw or somebody else in the seat where Mr. Chapman is serving as a holdover and thus could be removed without cause. *See Swan*, 100 F.3d at 981-88. He could have also removed Ms. Homendy.

31. Based on publicly reported information, Mr. Brown's removal was the first time that a sitting member of the NTSB has been removed prior to the expiration of their term in the Board's modern history.

32. Mr. Brown's firing fits within a pattern of the Trump Administration disproportionately removing Black government officials, and particularly presidentially appointed and Senate-confirmed Board members of independent multimember agencies. Based on available

10

data on the Trump Administration's firings and appointments, from the beginning of President Trump's second term in office through December 2025, approximately 75 percent of Black federal officials leading multimember agencies have been removed from office. In contrast, only approximately 27 percent of white federal officials on multimember agencies have been removed.

33.    As of December 2025, President Trump removed or attempted to remove six Black members of multi-member agencies—Mr. Brown, Robert Primus of the Surface Transportation Board, Gwynne Wilcox of the National Labor Relations Board, Charlotte Burrows of the Equal Employment Opportunity Commission, Travis LeBlanc of the Privacy and Civil Liberties Oversight Board, and Lisa Cook of the Federal Reserve.

34.    The removal of Mr. Brown and other Black independent agency board commissioners reflects a broader pattern across the government of President Trump removing high-level Black officials. On May 8, 2025, he removed Carla Hayden, a Black woman, as the Librarian of Congress. On February 21, 2025, he removed Gen. Charles Q. Brown, Jr., a Black man, as the Chairman of the Joint Chiefs of Staff. In General Brown's case, President Trump replaced him with Lieutenant General Dan Caine, a white man, who did not have the statutory requirement of status as a five-star general and could serve only because the President waived that requirement.

35.    President Trump and high government officials have made public statements indicating that he and his administration are seeking to remove people of color throughout the federal government, including:

- President Trump's statement on March 4, 2025, that "[w]e have to end the tyranny of so-called diversity, equity, and inclusion policies all across the entire federal government."

11

- The White House press release on March 4, 2025, stating President Trump has "declared an end to lower standards in the name of discriminatory 'diversity, equity, and inclusion' (DEI) initiatives."

- President Trump's statement on March 18, 2025, that "[w]e will terminate every diversity, equity, and inclusion program across the entire federal government."

- President Trump's claim on April 26, 2025, that he "ended all of the lawless so-called diversity, equity, and inclusion bullshit. All across the entire federal government and the private sector."

36.    In some of the President's firings of Black officials, White House representatives have made statements explicitly linking the choice to remove the individual to their relationship to ideas of diversity and inclusion. After Mr. Trump terminated Ms. Hayden as Librarian of Congress, the White House Press Secretary referenced the "quite concerning things that she had done at the Library of Congress in pursuit of DEI" in explaining the decision on May 5, 2025. Before his appointment, Secretary of Defense Pete Hegseth suggested that General Brown had obtained his appointment because of his race and stated that General Brown needed to be fired because of his commitment to diversity, equity, and inclusion.

37.    Under President Trump, the Executive Branch has also at times made a clear and demonstrable emphasis on hiring white men. *See, e.g.*, Meryl Kornfield, *Labor Department Social Media Campaign Depicts a White Male Workforce*, Wash. Post (Nov. 7, 2025), https://perma.cc/J3EX-H3SQ (documenting Department of Labor workforce posters featuring almost exclusively white men).

38.    More generally, Black officials and Black employees across the federal government have been removed from their jobs at disproportionate rates. *See* David Smith, *Trump Has*

*Assembled the Least Diverse U.S. Government This Century, Study Shows*, The Guardian (Nov. 21, 2025), https://perma.cc/H325-HXRH; Elisabeth Bumiller & Erica L. Green, *Trump Fires Black Officials from an Overwhelmingly White Administration*, N.Y. Times (Oct. 8, 2025), https://perma.cc/2DBG-3XFH; Erica Green, *In Trump's Federal Work Force Cuts, Black Women Are Among the Hardest Hit*, N.Y. Times (Aug. 31, 2025), https://perma.cc/QVG9-F7AM; J. David McSwane, *Dismissed by DEI: Trump's Purge Made Black Women With Stable Federal Jobs an 'Easy Target'*, ProPublica (June 4, 2025), https://perma.cc/6WTN-RGBX; Mitchell Hartman, *Government Job Cuts Have Disproportionate Effect on Black Federal Workers*, Marketplace (May 21, 2025), https://perma.cc/EFY4-V3CW.

39.     Additionally, in the Trump Administration's first 200 days, only two percent of all of President Trump's Senate-approved appointees have been Black individuals. Bumiller & Green, *supra*.

40.     Mr. Brown was the only Black member of the NTSB. Mr. Brown was removed as opposed to similarly situated members of the Board in part because of his race.

41.     Mr. Brown's status as a Democrat cannot serve as the sole reason President Trump removed him because, at the time of the removal, the Board included two other white Democratic members, Chair Jennifer Homendy and Member Thomas B. Chapman, who were not removed.

42.     When he removed Mr. Brown, President Trump offered no reason for his decision. Any post-hoc, non-discriminatory reason would represent a mere pretextual effort to cover up the impermissible role race played in Mr. Brown's termination.

43.     This choice—to remove the Black member of the Board without explanation while leaving in place similarly situated white members—fits within a pattern of Trump Administration removals of high-level Black officials in the federal government, including Senate-confirmed

members of independent Commissions. Consistently, when President Trump has removed Black Senate-confirmed appointees, he has either nominated a non-Black individual for their replacement or has not formally replaced them at all. This trend fits with President Trump's consistent messaging criticizing diversity and inclusion and his clear and demonstrable emphasis on hiring white people.

## PRINCIPLES OF QUO WARRANTO LAW AND MR. BROWN'S COMPLIANCE WITH THE PREDICATES FOR FILING A QUO WARRANTO PETITION

44.    On February 25, 2026, Mr. DeLeeuw was confirmed by the Senate by a 50-45 vote. *PN730-19—John DeLeeuw—National Transportation Safety Board*, Congress, https://www.congress.gov/nomination/119th-congress/730/19 (last visited Apr. 12, 2026). Mr. DeLeeuw took the oath of office as an NTSB Member on March 16, 2026, and has been holding himself out as an NTSB Member ever since. *John DeLeeuw*, NTSB, https://www.ntsb.gov/about/board/Pages/default.aspx#johndeleeuw (last visited Apr. 12, 2026).

45.    A writ of quo warranto provides a means for directly challenging the qualifications of a purported federal officer such as Mr. DeLeeuw. *See SW Gen., Inc. v. NLRB*, 796 F.3d 67, 81 (D.C. Cir. 2015), *aff'd,* 580 U.S. 288 (2017). Quo warranto actions in federal courts are "governed by the provisions of 16 D.C. Code §§ 3501-3548 (1981)." *Andrade v. Lauer*, 729 F.2d 1475, 1497-98 (D.C. Cir. 1984). Under D.C. Code § 16-3501, "[a] quo warranto may be issued from the United States District Court for the District of Columbia in the name of the United States against a person who within the District of Columbia usurps, intrudes into, or unlawfully holds or exercises . . . a public office of the United States."

46.    A proceeding on a petition for a writ of quo warranto is "deemed a civil action." *Id.*; *see also* Fed. R. Civ. P. 81(a)(4) (specifying that the Federal Rules of Civil Procedure apply to proceedings for quo warranto).

14

47.     The Attorney General of the United States or the U.S. Attorney may institute a quo warranto proceeding or authorize a third party to do so. *See* D.C. Code § 16-3502. But while most private parties cannot institute a quo warranto proceeding without the consent of one of these two officials, an "interested person" may "apply to the court by certified petition for leave to have the writ issued" when the Attorney General or U.S. Attorney has "refuse[d] to institute a quo warranto proceeding." D.C. Code § 16-3503. *See SW Gen., Inc.*, 796 F.3d at 81 ("If the Attorney General declines, the interested party can petition the court to issue the writ instead.").[2]

48.     Because Mr. Brown claims entitlement to the office purportedly held by Mr. DeLeeuw, he qualifies as an "interested person" for purposes of Section 16-3503. *See Newman v. U.S. of Am. ex rel. Frizzell*, 238 U.S. 537, 550 (1915).

49.     On March 20, 2026, counsel for Mr. Brown sent a letter by certified mail to the U.S. Attorney General and the U.S. Attorney for the District of Columbia asking them to exercise their authority under D.C. Code § 16-3502 to institute a quo warranto proceeding against Mr. DeLeeuw for purporting to usurp Mr. Brown's NTSB seat. The letter further noted Mr. Brown's interest in initiating a quo warranto action in their stead if they were unwilling to do so and stated that absent a response or action by April 3, 2026, "we will understand that lack of response as a constructive denial of this request and will proceed with the petition." A true and correct copy of that letter is attached as Exhibit A.

---

[2] Some broadly worded language in a handful of D.C. Circuit opinions suggests that quo warranto actions against public officials can be brought only by the Attorney General. *See, e.g.*, *Sibley v. Obama*, No. 12-5198, 2012 WL 6603088, at *1 (D.C. Cir. Dec. 6, 2012). But the D.C. Circuit has never used such language in a case in which the private party petitioner is an "interested person" (*i.e.*, a claimant to the contested office) and who is, thus, unambiguously authorized by Section 16-3503 to institute such an action upon the refusal of the Attorney General to do so.

50.     As of this filing, neither the Attorney General nor the U.S. Attorney has responded to the letter from Mr. Brown's counsel. Accordingly, Mr. Brown's request that a quo warranto proceeding be instituted has been constructively denied.

## REASONS FOR GRANTING THE PETITION

51.     As set forth above (¶¶ 24-43), Mr. Brown was never lawfully terminated from the NTSB and remains entitled to retain his role as an NTSB Member because he was appointed and confirmed to a term that was not scheduled to end until December 31, 2026. This is true for two independent reasons.

52.     *First*, the President may remove an NTSB member only "for inefficiency, neglect of duty, or malfeasance in office," 49 U.S.C. § 1111(c), but President Trump did not even allege that Mr. Brown had engaged in inefficiency, neglect of duty, or malfeasance in office, nor would there have been any basis for such an allegation.

53.     *Second*, the Fifth Amendment's Due Process Clause also forbids the federal government from denying individuals equal protection of the laws and creates a constitutional right to be free from illegal discrimination in employment perpetrated by the federal government, *Davis v. Passman*, 442 U.S. 228, 242-44 (1979). As a Black person, Mr. Brown is in a protected class. His removal is an adverse employment action, and he was treated differently from similarly situated people—the other members of the Board, and particularly the white Democratic members. President Trump has not offered a non-discriminatory reason for his choice to remove Mr. Brown, any purported non-discriminatory reason is pretextual, and race was at least in part the reason for removing Mr. Brown.

54.     Because Mr. Brown was never properly removed, there was no vacancy for Mr. DeLeeuw to lawfully fill. As a result, Mr. DeLeeuw's actions as a purported Member of the NTSB

16

constitute a usurpation in violation of D.C. Code § 16-3501. The conditions for issuance of a writ of quo warranto have therefore been satisfied.

### REQUEST FOR RELIEF

WHEREFORE, Petitioner requests that this Court:

(a) Grant leave for a writ of quo warranto to be issued by Mr. Brown's undersigned attorneys in the name of the United States to Mr. DeLeeuw;

(b) Fix a time within which Mr. DeLeeuw may appear and answer the writ pursuant to D.C. Code § 16-3542;

(c) Have a jury determine any contested issues of fact, as authorized by D.C. Code § 16-3544;

(d) Determine that Mr. Brown, and not Mr. DeLeeuw, is the rightful member of the NTSB entitled to serve the remainder of the term expiring December 31, 2026 (plus any holdover period available under 49 U.S.C. § 1111(c));

(e) Enter judgment that Mr. DeLeeuw be ousted and excluded from the NTSB seat rightfully held by Mr. Brown and that Mr. Brown may recover his costs pursuant to D.C. Code § 16-3545;

(f) Reinstate Mr. Brown to his rightful seat on the NTSB; and

(g) Grant any other relief this Court deems appropriate.

17

Dated: April 14, 2026                         Respectfully submitted,

/s/ *Joshua M. Salzman*

Catherine M.A. Carroll (D.C. Bar No. 497890)
Cynthia Liao (D.C. Bar No. 90036947)
Ross Snyder (D.C. Bar No. 90037922)
Joshua M. Salzman (D.C. Bar No. 982239)
Elena Goldstein (D.C. Bar No. 90034087)
**DEMOCRACY FORWARD**
**FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
(202) 316-9057
ccarroll@democracyforward.org

Jon M. Greenbaum (D.C. Bar No. 489887)
**JUSTICE LEGAL STRATEGIES PLLC**
P.O. Box 27015
Washington, D.C. 20038
(202) 601-8678
jgreenbaum@justicels.com

*Counsel for Petitioner Alvin Brown*

# EXHIBIT A



BY CERTIFIED MAIL
The Honorable Pam Bondi
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

The Honorable Jeanine Ferris Pirro
United States Attorney
601 D Street, NW
Washington, DC 20579

March 20, 2026

Re:    *Request for Quo Warranto Proceeding Against John DeLeeuw, a*
       *Purported Member of the National Transportation Safety Board*

Dear Attorney General Bondi and U.S. Attorney Pirro,

We write on behalf of Alvin Brown, a rightful Member of the National Transportation Safety Board (NTSB), to request that you exercise your authority pursuant to D.C. Code § 16-3502 to institute a quo warranto proceeding against John DeLeeuw for unlawfully purporting to usurp the NTSB seat rightfully held by Mr. Brown. "A quo warranto may be issued from the United States District Court for the District of Columbia in the name of the United States against a person who within the District of Columbia usurps, intrudes into, or unlawfully holds or exercises . . . a public office of the United States, civil or military." *Id.* § 16-3501. As explained below, Mr. DeLeeuw is intruding into a public office held by Mr. Brown.

Mr. Brown assumed a seat on the NTSB when the Senate unanimously confirmed his nomination by voice vote on March 8, 2024, for a term expiring on December 31, 2026. Under the terms of the Independent Safety Board Act of 1974, Mr. Brown was entitled to retain his NTSB position for the duration of his fixed term of service, absent

inefficiency, neglect of duty, or malfeasance in office. Indeed, the NTSB's structure, mission, and functions, along with the terms set for members, demonstrate Congress's intent to provide the NTSB with continuity, stability, and insulation from political pressure exerted by the President. *See generally* 49 U.S.C. § 1111.

Nonetheless, on May 5, 2025, President Trump removed Mr. Brown from his office despite the absence of any cause that would justify this removal. Because there was no statutory authority to remove Mr. Brown without cause, he was never properly removed from office and remains entitled to his seat on the NTSB. The purported removal was unlawful and ineffective for the additional reason that it was motivated by impermissible racial animus.

Despite the fact that Mr. Brown's office was never lawfully vacated, on January 13, 2026, President Trump nominated John DeLeeuw to fill Mr. Brown's NTSB seat and to serve for the unexpired portion of Mr. Brown's term. On March 16, 2026, following Senate confirmation, Mr. DeLeeuw took an oath of office and purported to assume the NTSB seat that Mr. Brown still occupies. As a result, Mr. DeLeeuw is now unlawfully usurping the office rightfully belonging to Mr. Brown.

The validity of the purported removal of Mr. Brown is the subject of ongoing litigation captioned *Brown v. Trump*, No. 25-1764-DLF (D.D.C.). Mr. Brown maintains that the district court in that existing action has authority to provide full relief, including reinstatement, to Mr. Brown, notwithstanding Mr. DeLeeuw's recent confirmation. *See Swan v. Clinton*, 100 F.3d 973, 975-81 (D.C. Cir. 1996) (holding that Court had power to provide relief to plaintiff challenging legality of his removal, notwithstanding the fact that the President had recess appointed another person to plaintiff's seat); *cf. Kalbfus v. Siddons*, 42 App. D.C. 310, 319-21 (D.C. Cir. 1914) (finding mandamus, not quo warranto, is the most efficacious and appropriate means for restoring an official who was never lawfully removed from office). However, the U.S. Solicitor General recently expressed the view that if "there [are]

2

two competing claimants" to an office following a removal of disputed validity, a "quo warranto" action is the proper procedural vehicle for establishing the wrongfully removed officer's right to reinstatement. Tr. of Oral Arg. 34, *Trump v. Cook*, No. 25A312 (U.S. Jan. 21, 2026), https://perma.cc/36P9-ZPD6. Accordingly, in an abundance of caution, it is appropriate for the United States to commence a quo warranto action against Mr. DeLeeuw.

Should you to decline to exercise your authority to commence a quo warranto action, Mr. Brown intends to petition for the right to commence such an action in the name of the United States, as authorized by D.C. Code § 16-3503. We would appreciate your response or action by April 3, 2026. If you fail to respond by that date, we will understand that lack of response as a constructive denial of this request and will proceed with the petition.

Sincerely,
*/s/Catherine M.A. Carroll*
*/s/Cynthia Liao*
Democracy Forward
*Counsel for Alvin Brown*


cc:     Jeremy S.B. Newman
        Trial Attorney
        United States Department of Justice
        Civil Division, Federal Programs Branch
        jeremy.s.newman@usdoj.gov
        (by email)

3